UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

VALUE DRUG COMPANY,

                       Plaintiff,

  v.

TAKEDA PHARMACEUTICALS U.S.A., INC., *et al.*,

                       Defendants.

Civil Action No.: 1:22-mc-23781-KMW
Related to 2:21-cv-03500-MAK (E.D. Pa.)

# PLAINTIFF VALUE DRUG COMPANY'S OPPOSITION TO LARS TAAVOLA AND KEN CAPPEL'S MOTION TO QUASH SUBPOENA

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 2 |
| III. | ARGUMENT | 4 |
| | A. Cappel and Taavola's Motion Is Untimely. | 4 |
| | B. Cappel and Taavola Lack Standing to Challenge the Subpoena to AT&T. | 5 |
| | C. Plaintiff's Subpoena Targets Highly Relevant Information. | 7 |
| | D. The Tully Agreement Is Not Available to Taavola or Cappel. | 11 |
| IV. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*AF Holdings, LLC v. Does 1-162*,
   No. 11-cv-23036, 2012 WL 488217 (S.D. Fla. Feb. 14, 2012) ................................................. 5

*Alton v. Liberty Med. Supply, Inc.*,
   No. 07-cv-14094, 2007 WL 9702561 (S.D. Fla. Oct. 5, 2007) ................................................. 9

*Anglin v. Maxim Healthcare Servs., Inc.*,
   No. 08-cv-689, 2009 WL 928305 (M.D. Fla. Apr. 3, 2009) ..................................................... 8

*Boy Racer, Inc. v. John Does 1-34*,
   No. 11-23035, 2012 WL 1535703 (S.D. Fla. May 1, 2012) ..................................................... 6

*Bozo v. Bozo*,
   No. 12-cv-24174, 2013 WL 12128680 (S.D. Fla. Aug. 16, 2013) ........................................... 8

*Carpenter v. U.S.*,
   138 S. Ct. 2206 (2018) ........................................................................................................... 7

*CCB LLC v. Banktrust*,
   No. 10-cv-228, 2010 WL 4038740 (N.D. Fla. Oct. 14, 2010) ................................................. 5

*Cellairis Franchise, Inc. v. Duarte*,
   193 F. Supp. 3d 1379 (N.D. Ga. 2016) ................................................................................... 6

*Centennial Bank v. Servisfirst Bank Inc.*,
   No. 16-cv-88, 2016 WL 4163560 (M.D. Fla. Aug. 5, 2016) ................................................... 4

*Classic Soft Trim, Inc. v. Albert*,
   No. 18-cv-1237, 2020 WL 6730977 (M.D. Fla. Sept. 21, 2020) ............................................. 8

*Cole v. Am. Cap. Partners Ltd., Inc.*,
   No. 06-cv-80525, 2006 WL 8434811 (S.D. Fla. Aug. 8, 2006) ............................................... 6

*In re Domestic Drywall Antitrust Litig.*,
   163 F. Supp. 3d 175 (E.D. Pa. 2016) ..................................................................................... 8

*Fitzhenry v. ADT Corp.*,
   No. 14-80180, 2014 WL 12874055 (S.D. Fla. Aug. 8, 2014) ............................................... 10

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
   No. 14-mc-25, 2014 WL 5810920 (M.D. Fla. Nov. 7, 2014) .................................................. 5

*In re Generic Pharms. Pricing Antitrust Litig.*,
   338 F. Supp. 3d 404 (E.D. Pa. 2018) ..................................................................................... 8

*Gilmore v. Jones*,
   No. 21-13184, 2022 WL 267422 (D.N.J. Jan. 28, 2022)......................................................7, 9

*Glob. HTM Promotional Grp., Inc. v. Angel Music Grp. LLC*,
   No. 06-cv-20441, 2007 WL 221423 (S.D. Fla. Jan. 26, 2007)............................................5, 10

*Henderson-Burkhalter v. Nat'l Union Fire Ins. Co.*,
   No. 18-cv-0928, 2019 WL 8889978 (E.D. La. Jan. 18, 2019) ..................................................7

*Keim v. ADF Midatlantic*,
   No. 12-80577, 2016 WL 720967 (S.D. Fla. Feb. 22, 2016) ..................................................7, 9

*Malhan v. Grewal*,
   No. 16-cv-8495, 2020 WL 6391180 (D.N.J. Nov. 2, 2020) ......................................................9

*Malibu Media, LLC v. John Does 1-25*,
   No. 12-cv-266, 2012 WL 3940142 (M.D. Fla. Aug. 21, 2012)...........................................6, 10

*Nationwide Mut. Ins. Co. v. Ft. Myers Total Rehab Ctr.*, Inc.,
   No. 08-cv-766, 2010 WL 11507085 (M.D. Fla. Apr. 9, 2010) .................................................9

*Paslar v. Stamford Hosp.*,
   No. 16-cv-01645, 2017 WL 3055508 (D. Conn. July 19, 2017) ..............................................4

*Patrick Collins, Inc. v. John Does 1-13*,
   No. 12-cv-7620, 2013 WL 3466833 (D.N.J. July 10, 2013) .....................................................7

*Quarles v. Tenn. Steel Haulers, Inc.*,
   No. 17-cv-308, 2018 WL 5023313 (M.D. Ala. June 13, 2018)................................................6

*Russell v. City of Tampa, Fla.*,
   No. 16-cv-912, 2017 WL 2869518 (M.D. Fla. July 5, 2017) ...................................................9

*Schmulovich v. 1161 Rt. 9 LLC*,
   No. 07-cv-597, 2008 WL 4572537 (D.N.J. Oct. 14, 2008) ......................................................7

*Smith v. Maryland*,
   442 U.S. 735 (1979)..................................................................................................................6

*Smith v. Pefanis*,
   No. 08-cv-1042, 2008 WL 11333335 (N.D. Ga. Oct. 30, 2008) ..............................................9

*U.S. v. Brooks*,
   841 Fed. App'x 346 (3d Cir. 2020)........................................................................................10

I.  **INTRODUCTION**

Movants Lars Taavola and Ken Cappel are former in-house counsel for Amneal Pharmaceutical, Inc. responsible for negotiating Amneal's anticompetitive agreements at issue in the antitrust conspiracy alleged in *Value Drug Company v. Takeda Pharmaceuticals, U.S.A., Inc., et al.*, No. 21-cv-3500 (E.D. Pa.) (the "EDPA Action"). In the EDPA Action, Amneal is alleged to have conspired with its other pharmaceutical manufacturer codefendants (Takeda, Par, and Watson) to restrain brand and generic Colcrys sales in violation of Sections 1 and 2 of the Sherman Act. *See* First Am. Class Act. Compl., 21-cv-3500 (Jan. 18, 2022, ECF No. 163). As is typical in this kind of antitrust conspiracy case, Defendants conducted many relevant conspiracy communications *via* telephone calls, text messages, and in-person meetings. The timing and extent of these at-issue conspiracy contacts with other relevant agents of the Defendant co-conspirators, **both known agents and unknown agents**, is precisely the reason for Plaintiff's at-issue subpoena for the phone records maintained by AT&T Wireless ("AT&T").

Movants' motion should be denied as expeditiously as possible. Movant's counsel is Defendant Amneal's counsel in the EDPA Action. Movants' lawyers received due notice of the at-issue subpoena on October 28, 2015.[1] Yet they waited until the day of compliance (November 18) to file this motion to quash, which, under applicable law, renders the motion untimely and dead-on-arrival. Even so, AT&T held back its intended November 18, 2015 production as the direct result of this motion, and, despite the readiness of that production, will not now produce AT&T's phone records for Taavola and Cappel in the absence of this Court's order authorizing same.[2]

---

[1] *See* Ex. 1, Oct. 28, 2022 Demuth email with Notice of Subpoenas. The exhibits referenced herein are attached to the accompanying Declaration of Bradley J. Demuth.

[2] *See* Ex. 2, Nov. 20, 2022 AT&T email.

1

The motion to quash is also baseless. The subpoena is directed to AT&T for production of AT&T phone records, to which AT&T has itself not objected. Taavola and Cappel accordingly have no standing to challenge the subpoena on any undue burden or costs grounds. Nor do they have any cognizable privacy interest in the records sought from AT&T sufficient to confer standing. Even if they did, the requested phone records are highly relevant and should be promptly produced. For any legitimate privacy interest, the proper remedy is a tailored protective order, not a motion, as here, seeking to block the discovery sought. The motion to quash should be denied.

## II.  BACKGROUND

Per the alleged conspiracy agreements, generic manufacturers (defendants Par, Amneal, and Watson in the EDPA Action) agreed with Takeda in November and December 2015[3] to drop their challenges to Takeda's brand Colcrys patents (set to be tried in December 2015) and delay their respective launches of generic Colcrys in order to preserve Takeda's Colcrys monopoly for another two years. In exchange, each obtained a period during which it would face limited or no competition and therefore higher profits than they could otherwise expect to obtain in the absence of the conspiracy. Under the conspiracy: (i) Par would enter the market first in July 2018 and be the exclusive generic Colcrys supplier; and (ii) Amneal and Watson would enter in October 2020 and be the only additional generic Colcrys suppliers permitted in the market for 135 days, before eight other follow-on generic manufacturers who wanted to compete in the market would be permitted to do so.

The cell phone numbers at issue for Taavola and Cappel are the cell phone numbers they

---

[3] After execution of a related term sheet in December 2015, Amneal executed its settlement agreement with Takeda in March 2016.

used for business purposes and at-issue conspiracy communications.[4] The subpoena seeks telephone records from the conspiracy's inception in 2015 through its unexpected disruption in December 2019 (when a non-conspirator unexpectedly surmounted the barriers created by the conspiracy), in order to identify the time, date, duration, and frequency of all relevant conspiracy communications. Though various "call me" emails have been produced by Defendants in the EDPA Action, several conspiracy participants, including movant Cappel, denied during their depositions that such phone calls had ever occurred. Thus, the phone records sought here are highly relevant not only to the conspiracy itself, but also to non-collateral impeachment of the credibility of these witnesses.

The temporal scope of the subpoena is appropriately tailored to the issues in EDPA Action. The January 9, 2015 start date is the day the Federal Circuit issued its decision in the related Hikma Colcrys patent litigation,[5] which prompted both Taavola and Cappel to immediately consider whether Amneal should settle its Colcrys patent litigation with Takeda. The end date, December 31, 2019, is a month following the date that Mylan, a non-conspiring generic Colcrys manufacturer, unexpectedly disrupted the conspiracy. The December 31, 2019 end date is thus intended to capture relevant conspiracy phone calls and texts prompted by that unexpected conspiracy disruption event. In between 2015 and 2019 there were numerous other ongoing events for which conspiracy participants would have taken notice, including but not limited to: (i) Takeda's initiation of Colcrys patent suits starting in October 2016 against follow-on generic Colcrys manufacturers Mylan, Hetero, Granules, Macleods, Strides, Dr. Reddy's, Alkem, and

---

[4] *See, e.g.*, Ex. 3, Oct. 27, 2015 Taavola email (at-issue phone number identified in signature block); Ex. 4, Jan. 27, 2016 Cappel email (same).

[5] *Takeda Pharmaceuticals USA, Inc. v. West-Ward Pharm. Corp.*, 2015-1139 (Fed. Cir.).

Zydus[6]; and (ii) Takeda's separate and still ongoing lawsuit against Mylan, alleging that Mylan's unexpected November 2019 launch violated the parties' prior agreement that Mylan would not launch until 135 days after Defendant Amneal's and Defendant Watson's launch in October 2020.[7] It is reasonable to expect the requested AT&T phone records will corroborate conspirator-to-conspirator contacts, by and through their various employee agents, contemporaneously with and throughout these ongoing events.

Discovery in the EDPA Action closes on December 22, 2022. Summary judgment motions are due in January 2023. A twenty-two day trial is scheduled to commence on February 27, 2023.

## III. ARGUMENT

### A. Cappel and Taavola's Motion Is Untimely.

Cappel and Taavola motion is untimely for having been filed only six minutes before the time set in the subpoena for AT&T's compliance. "[C]ourts hold that a motion to quash filed *before* the date of compliance stated on the face of the subpoena is timely." *Centennial Bank v. Servisfirst Bank Inc.*, No. 16-cv-88, 2016 WL 4163560, at *4 (M.D. Fla. Aug. 5, 2016) (emphasis in original); *see also Paslar v. Stamford Hosp.*, No. 16-cv-01645, 2017 WL 3055508, at *3 (D. Conn. July 19, 2017) ("The subpoena sets a return date of June 29, 2017. Defendants filed their motion to quash on that date, and not before, thereby making the motion to quash untimely.") (emphasis in original)

---

[6] *Takeda Pharmaceuticals U.S.A., Inc. v. Mylan Pharmaceuticals Inc.*, 1:16-cv-00987-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Granules Pharmaceuticals Inc.*, 1:17-cv-01019-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Hetero Labs Ltd.*, 1:17-cv-01020-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Macleods Pharmaceuticals Ltd.*, 1:17-cv-01469-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Strides Pharma Global PTE Ltd.*, 1:17-cv-01690-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Dr. Reddy's Laboratories, Ltd.*, 1:18-cv-00101-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Alkem Laboratories Ltd.*, 1:18-cv-00189-RGA (D. Del.); *Takeda Pharmaceuticals U.S.A., Inc. v. Zydus Pharmaceuticals (USA) Inc.*, 1:18-cv-00464-RGA (D. Del.).

[7] *Takeda Pharmaceuticals U.S.A., Inc. v. Mylan Pharmaceuticals Inc.*, 1:19-cv-2216-RGA (D. Del.).

(citation omitted). In *CCB LLC v. Banktrust*, for instance, a court denied as untimely a motion to quash filed 27 minutes before the time set for compliance because "such a small amount of time is clearly insufficient for any court to issue a meaningful and timely order, especially considering that it provides no time for the filing of a response to the motion by the party issuing the subpoena." *CCB LLC v. Banktrust*, No. 10-cv-228, 2010 WL 4038740, at *1 (N.D. Fla. Oct. 14, 2010); *see also Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 14-mc-25, 2014 WL 5810920, at *2 (M.D. Fla. Nov. 7, 2014) (refusing to reconsider untimely motion to quash filed by non-party Hertz eight minutes too late).

Here, Cappel and Taavola filed their motion on the day of compliance, not before, and only six minutes before AT&T's 9:00 a.m. time for compliance, and they informed Plaintiff of their motion only after that time for compliance had passed.[8] Their motion is clearly untimely.

### B. Cappel and Taavola Lack Standing to Challenge the Subpoena to AT&T.

Cappel and Taavola lack standing to challenge Plaintiff's subpoena to AT&T. "A party to an action generally may not seek to quash or modify a subpoena on behalf of the non-party to which it was issued." *AF Holdings, LLC v. Does 1-162*, No. 11-cv-23036, 2012 WL 488217, at *3 (S.D. Fla. Feb. 14, 2012). Of the few available grounds for moving to quash a subpoena under Rule 45(d)(3), Cappel and Taavola certainly do not have standing to claim, as they have, that the subpoena imposes an undue burden on them. *Glob. HTM Promotional Grp., Inc. v. Angel Music Grp. LLC*, No. 06-cv-20441, 2007 WL 221423, at *3 (S.D. Fla. Jan. 26, 2007) ("Because Plaintiff is not producing the records, they cannot claim the production of the records as hardship. Rather, Sprint is producing the records as required by the subpoena. Sprint has not objected and has not shown any hardship in the production of the records."); *AF Holdings, LLC*, 2012 WL 488217, at

---

[8] Ex. 5, Nov. 18, 2022 9:05 a.m. McCarty email (without its attached motion to quash).

5

*3 n.1 ("Courts that have addressed this issue have concluded that the issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything.").

Nor do Cappel or Taavola have standing to claim the subpoena requires the "disclosure of privileged or other protected matter" under Rule 45(d)(3), which, as third parties to the subpoena, is their "only theoretically available" argument. *Boy Racer, Inc. v. John Does 1-34*, No. 11-23035, 2012 WL 1535703, at *3 (S.D. Fla. May 1, 2012). The contention that the requested records are sensitive, confidential, or proprietary "without more, is not enough to give rise to standing." *Cellairis Franchise, Inc. v. Duarte*, 193 F. Supp. 3d 1379, 1381 (N.D. Ga. 2016) (quoting *In re Rum Marketing Int'l, Ltd.*, No. 07-21466, 2007 WL 2702206, at *4 (S.D. Fla. Sept. 14, 2007)). Cappel and Taavola fail to sufficiently "demonstrate[] a personal right or privilege with respect to the materials subpoenaed." *Cole v. Am. Cap. Partners Ltd., Inc.*, No. 06-cv-80525, 2006 WL 8434811, at *3 (S.D. Fla. Aug. 8, 2006). "It is clear that phone records as a whole are not subject to privilege" and they have "provide[d] the Court no basis for determining that a personal right is at stake." *Quarles v. Tenn. Steel Haulers, Inc.*, No. 17-cv-308, 2018 WL 5023313, at *1 (M.D. Ala. June 13, 2018). Far from there being a "personal right at stake," it is well established that there no reasonable expectation of privacy in one's phone records for Fourth Amendment purposes. *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("a person has no legitimate expectation of privacy in information that he voluntarily turns over to third parties"); *see also Malibu Media, LLC v. John Does 1-25*, No. 12-cv-266, 2012 WL 3940142, at *6 (M.D. Fla. Aug. 21, 2012) (no standing where there was no reasonable expectation of privacy).[9]

---

[9] A privacy interest recognized under the Fourth Amendment does not vest Taavola and Cappel with a "personal right at stake" on this motion. Plaintiff is not a state actor and,
*cont'd*

Cappel and Taavola's cases are inapt. The sole case from this district finding standing to challenge a subpoena for phone records, *Keim v. ADF Midatlantic*, No. 12-80577, 2016 WL 720967 (S.D. Fla. Feb. 22, 2016), nevertheless concluded that where (as here) the sought-after phone records do not include "the actual text of messages sent, any photographs sent, or any other private messages sent . . . there is no real danger . . . that privacy interests are at serious risk." *Id.* at *2. In other words, it ultimately found there was no personal interest at stake. Movants' cited decision involving internet service provider addresses denied the motion to quash because "Defendant has voluntarily disclosed his personal information to his service provider . . . Defendant cannot now claim that such information is privileged or confidential to establish a basis for quashing a subpoena." *Patrick Collins, Inc. v. John Does 1-13*, No. 12-cv-7620, 2013 WL 3466833, at *3 (D.N.J. July 10, 2013). That same reasoning applies here. *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-cv-597, 2008 WL 4572537 (D.N.J. Oct. 14, 2008), involving a subpoena for financial and banking records, has no application here. And the movant in *Gilmore v. Jones* had standing by virtue of a newsperson's privilege, here an inapt doctrine which protects not only the content of communications but the identities of sources. No. 21-13184, 2022 WL 267422, at *3 (D.N.J. Jan. 28, 2022).

### C. Plaintiff's Subpoena Targets Highly Relevant Information.

Even if Cappel or Taavola had a personal interest in AT&T's records sufficient to establish

---

accordingly, its subpoena of documents from AT&T does not implicate Taavola or Cappel's Fourth Amendment rights. Movants' reliance on *Carpenter v. U.S.*, 138 S. Ct. 2206 (2018), is therefore puzzling. As one court recently explained in denying a motion to quash a phone records subpoena, "The *Carpenter* case concerned the Government's Fourth Amendment search of a criminal target's historic cell-site location information in a criminal investigation. The facts of the case, the statutes involved in the Supreme Court's analysis, and the rationale behind the Court's decision have *nothing* whatsoever to do with the issues before this Court and citation to the case by counsel is frivolous. The Fourth Amendment proscribes only governmental action." *Henderson-Burkhalter v. Nat'l Union Fire Ins. Co.*, No. 18-cv-0928, 2019 WL 8889978, at *2 (E.D. La. Jan. 18, 2019) (emphasis in original).

standing, any such interest is vastly outweighed by Plaintiff's need to obtain this highly relevant discovery. Relevant discovery is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Bozo v. Bozo*, No. 12-cv-24174, 2013 WL 12128680, at *2 (S.D. Fla. Aug. 16, 2013) (Williams, J.). "Information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence." *Anglin v. Maxim Healthcare Servs., Inc.*, No. 08-cv-689, 2009 WL 928305, at *2 (M.D. Fla. Apr. 3, 2009).

Plaintiff's subpoena to AT&T meets that standard and is not, as Cappel and Taavola assert, overbroad. Phone records are often important to establishing the communications that make an antitrust conspiracy. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 431 (E.D. Pa. 2018) (denying motion to dismiss based, in part, on phone records); *In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 239 (E.D. Pa. 2016) (citing phone record evidence in denying motion for summary judgment); *see also Classic Soft Trim, Inc. v. Albert*, No. 18-cv-1237, 2020 WL 6730977, at *3 (M.D. Fla. Sept. 21, 2020) ("The information sought from the wireless carriers is relevant and proportional to the case pending against Katzkin Leather and Albert which alleges that Katzkin Leather, through its employees, worked in concert with Albert to take over the Orlando leather restyling market."). This case is no exception. And in this case, the phone records are also non-collateral impeachment of witness denials that the communications took place.

Even Taavola and Cappel acknowledge that their phone records from the conspiracy's formation in 2015 and 2016 are relevant. But the conspiracy's formation in 2015 and 2016 was only its start. Plaintiff alleges a years-long conspiracy during which discovery has already shown the conspiring parties communicated by phone both to establish the conspiracy *and* to enforce it. Taavola's and Cappel's phone records will show communications among alleged conspirators

8

during several key moments between the conspiracy's inception in 2015/2016 and its unexpected disruption in late 2019, including but not limited to when Takeda, in furtherance of the conspiracy, filed and later settled any of the numerous additional follow-on patent litigation cases throughout 2016-2018, when Par launched Takeda's authorized generic Colcrys in 2018, and when Takeda, in furtherance of an effort to enforce the conspiracy, immediately sued Mylan in 2019 for disrupting it and depriving Defendants Amneal and Watson of their enjoyment of the conspiracy's fruits: a 135 day exclusivity period.

During the conspiracy's formation and its subsequent enforcement, regular calls near-in-time to contemporaneously-documented conspirator-to-conspirator contacts will likely reveal other, presently unknown, agents of the conspirators, including go-betweens. Plaintiff must be permitted to investigate any phone record communication made by the conspiracy participants between 2015-2019 so as to identify those that are and are not conspiracy-related. The subpoena therefore seeks highly relevant information and is neither temporally nor substantively overbroad.[10]

---

[10] This stands in stark contrast to the irrelevant information sought in Cappel and Taavola's cited cases, none of which alleges an antitrust conspiracy. *See Malhan v. Grewal*, No. 16-cv-8495, 2020 WL 6391180, at *4 (D.N.J. Nov. 2, 2020) ("The subpoena at issue seeks information that has nothing to do with the allegations of this case"); *Gilmore*, 2022 WL 267422, at *2 ("the Court knows nothing about Murdock, including what role he played in the alleged conspiracy, what information he might have, or how he relates to the claims that Gilmore is a 'deep state shill linked to George Soros'"); *Russell v. City of Tampa, Fla.*, No. 16-cv-912, 2017 WL 2869518, at *4 (M.D. Fla. July 5, 2017) (narrowing subpoena for four days of phone records when all that was relevant were the "moments before, during and after the accident" at issue in the case); *Keim*, 2016 WL 720967, at *2 (subpoena overbroad where seeking eight years of records, up to the present, to establish plaintiff's *prior* consent to complained-of conduct); *Alton v. Liberty Med. Supply, Inc.*, No. 07-cv-14094, 2007 WL 9702561, at *1 (S.D. Fla. Oct. 5, 2007) (subpoena overbroad because plaintiff's calls were relevant only in the moments after vandalizing a car); *Nationwide Mut. Ins. Co. v. Ft. Myers Total Rehab Ctr.*, Inc., No. 08-cv-766, 2010 WL 11507085, at *3 (M.D. Fla. Apr. 9, 2010) (document request limited to include records of calls to those patients who defendants allegedly threatened by phone); *Smith v. Pefanis*, No. 08-cv-1042, 2008 WL 11333335, at *2 (N.D.

*cont'd*

Cappel and Taavola also claim that Plaintiff's subpoena is overbroad because their phone records log both business and personal calls. Discovery has shown, however, that they both used the at-issue phone numbers for business purposes and conspiracy-related communications.[11] It may be true that the subpoenaed records "will disclose both private and business affairs," but "one of the roles of discovery is to allow both parties to uncover information that is relevant in deciding the matter that is before the court." *Glob. HTM Promotional Grp., Inc.* 2007 WL 221423, at *2. And, as discussed above, neither Cappel nor Taavola has a reasonable expectation of privacy in their phone records—which will show little more than the dates, time, and duration of at-issue calls and text messages, and generalized location information.[12] Moreover, Cappel and Taavola have failed to show why a protective order would "not adequately protect any private or confidential information that may be contained in the phone records." *Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 12874055, at *1 (S.D. Fla. Aug. 8, 2014). The relevance of Cappel and Taavola's phone records easily outweighs whatever privacy interest they have, if any, in AT&T's records. *Id.* ("The Court finds that any privacy right to Plaintiff's phone records are outweighed by ADT's need for the records to present a defense to Plaintiff's TCPA claims."); *Malibu Media, LLC*, 2012 WL 3940142, at *6 ("The Defendants' need to protect their names, addresses and telephone numbers is outweighed by the Plaintiff's need to obtain the information to prosecute this

---

Ga. Oct. 30, 2008) (quashing for improper service and because Defendants already had phone records from the sole person whose calls would have been relevant to identify in the sought-after phone records).

[11] *See* n.4, *supra*.

[12] Movants' contention that the subpoena's request for generalized location information is grounds alone for granting their motion is baseless. Even in a criminal case, the government's inclusion of such generalized location information has not resulted in the kind of discovery bar movants seek to obtain here in a civil case. *See U.S. v. Brooks*, 841 Fed. App'x 346, 347, 350 (3d Cir. 2020) (upholding subpoenas for telephone records notwithstanding its inclusion of a request for location information).

case.").

### D. The Tully Agreement Is Not Available to Taavola or Cappel.

Taavola and Cappel are not similarly situated to Dr. Tully. Both Taavola and Cappel worked directly for Amneal and were the Amneal in-house lawyers responsible for Amneal's conspiracy agreements. The accommodations Plaintiff made to non-party Dr. Tully are simply not available to Taavola and Cappel.[13]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court expeditiously enter the attached proposed order, denying the motion to quash in its entirety.

Dated: November 23, 2022                     Respectfully submitted,

                                   By:   /s/ Scott E. Perwin
                                         Scott E. Perwin

                                         Scott E. Perwin
                                         **KENNY NACHWALTER P.A.**
                                         Four Seasons Tower, Suite 1100
                                         1441 Brickell Avenue
                                         Miami, FL 33131
                                         (305) 373-1000
                                         jgray@knpa.com

                                         Bradley J. Demuth
                                         Raymond N. Barto
                                         **FARUQI & FARUQI LLP**
                                         685 Third Avenue, 26th Floor
                                         New York, NY 10017
                                         (212) 983-9330
                                         bdemuth@faruqilaw.com
                                         rbarto@faruqilaw.com

                                         *Counsel for Plaintiff*

---

[13] Notably, the accommodations made to Dr. Tully include the express reservation that additional phone number searches may be conducted in the event other conspiracy contact numbers are identified through Plaintiff's analysis of the phone record productions made by the telephone carriers for the numbers used by the direct conspiracy participants, including Taavola and Cappel.

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2022, I served the foregoing by electronically filing this document with the Clerk of Court using the CM/ECF system.

Dated: November 23, 2022  /s/ *Scott E. Perwin*
Scott E. Perwin

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| VALUE DRUG COMPANY,<br>      Plaintiff,<br>v.<br>TAKEDA PHARMACEUTICALS U.S.A., INC., *et al.*,<br>      Defendants. | Civil Action No.: 1:22-mc-23781-KMW<br>Related to 2:21-cv-03500-MAK (E.D. Pa.) |

**[PROPOSED] ORDER DENYING MOTION TO QUASH**

  Before the Court is a motion to quash subpoena issued to AT&T Wireless ("AT&T") for AT&T phone records, filed by Lars Taavola and Ken Cappel, two of the individuals whose cell phone numbers are included in the subpoena's request for AT&T phone records. AT&T itself has not objected to the subpoena, but as a result of this motion to quash, has held back its responsive production that was due to be made on November 18, 2022.

  The subpoena issued from *Value Drug Company v. Takeda Pharmaceuticals, U.S.A., Inc., et al.*, No. 21-cv-3500 (E.D. Pa.) (the "EDPA Action"), an antitrust action involving an alleged conspiracy between Amneal Pharmaceutical, Inc. and its other pharmaceutical manufacturer codefendants (Takeda, Par, and Watson) to restrain brand and generic Colcrys sales in violation of Sections 1 and 2 of the Sherman Act.

  Plaintiff in the EDPA Action opposes the motion to quash, observing that Mr. Taavola and Mr. Cappel are both former in-house counsel for Amneal who were responsible for negotiating Amneal's anticompetitive and conspiracy agreements at issue in the EDPA Action. Plaintiff subpoenaed the requested AT&T phone records to, among other things, establish the participants to, and the time, duration, frequency of, relevant conspiracy communications from its inception in 2015 through its unexpected disruption in 2019.

1

Upon consideration of the motion to quash and the opposition thereto, and finding the subpoena both reasonable and appropriately tailored, it is hereby **ORDERED** that said motion be, and hereby is, **DENIED.**

Subpoena recipient AT&T is hereby authorized and directed to produce its phone records for Lars Taavola, (917) 701-6495, and Ken Cappel, (201) 852-1336, as expeditiously as possible.

**IT IS SO ORDERED.**

_____

**Williams, J.**
