UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| VALUE DRUG COMPANY<br><br>                    Plaintiff,<br><br>- against -<br><br>TAKEDA PHARMACEUTICALS, U.S.A., INC., *et al.*,<br><br>                    Defendants. | Civil Action No.: 1:22-mc-23781-KMW<br>Related Case No.: 2:21-cv-03500-MAK<br>(E.D. Pa). |

### LARS TAAVOLA AND KEN CAPPEL'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO QUASH SUBPOENA FOR PERSONAL PHONE RECORDS AND LOCATION DATA

Value Drug's Opposition to Lars Taavola and Ken Cappel's ("Movants") Motion to Quash, *see* ECF No. 8, ("Opposition" or "Opp") lays bare Value Drug's intent to engage in an unbounded fishing expedition into Movants' personal and protected information. Value Drug seeks almost *five years* of Movants' phone records and location data yet provides no evidence suggesting that any of the information it seeks is likely to uncover relevant information. Instead, Value Drug relies entirely on meritless procedural objections and rank speculation in an attempt to resist Movants' Motion to Quash. And Value Drug's Opposition refuses to explain why it agreed to substantially narrow the same subpoena for another similarly situated individual yet refuses to agree to narrow the subpoena on the same terms with Movants. Because Value Drug's subpoena is facially overbroad and will not result in the discovery of any relevant information, this Court should grant Movant's Motion to Quash in its entirety.

I.  ARGUMENT

    A.  **Movants' Motion is Timely.**

Value Drug first argues that Movants' Motion to Quash should be rejected as untimely, because Movants' Motion was filed "six minutes before the time set in the subpoena for AT&T's compliance." Opp. at 4. This argument fails. Courts in this district and elsewhere recognize that a "motion to quash is generally considered timely if it is brought before the time indicated for compliance," *Flynn v. Square One Distribution, Inc.*, 2016 WL 2997673, at *1 (M.D. Fla. May 25, 2016), even if just minutes before, *see Friedman v. Dollar Thrifty Automotive Group*, 2015 WL 3484743, at *2 (M.D. Fla. June 2, 2015) ("Hertz had until September 24, 2014, at 9:00 AM to serve the Motion. Because Hertz did, in fact, file the Motion at 8:53 AM (albeit slightly) prior to 9:00 AM, it complied with Fed. R. Civ. P. 45(d)(2)(B), and the Motion was timely.").[1] *See also, e.g.*, *Diodato v. Wells Fargo Ins. Servs. USA, Inc.*, 2013 WL 6054824, at *1 (M.D. Pa. Nov. 15, 2013) ("The date of compliance was July 11, 2013, or 21 days after the date of service. Marsh's motion to quash was filed on July 11, 2013. Thus, this Court finds that the motion to quash was timely."); *In re Williams*, 2021 WL 1912401, at *8 (Bankr. D.N.J. May 12, 2021) ("The return date of the second subpoena was January 28, 2021. The Purkinses filed their Motion to Quash the same day. Therefore, the motion was timely.").

Here, Value Drug concedes, as it must, that the Motion to Quash was filed "before the time indicated for compliance" with the subpoena. *Flynn*, 2016 WL 2997673, at *1. That is the end of the inquiry. Whether the Motion was filed six minutes, six hours, six days, or six months

---

[1] Value Drug cites *Friedman v. Dollar Thrifty Automotive Group*, 2014 WL 5810920, at *1 (M.D. Fla. Nov. 7, 2014) in its Opposition, which was the underlying magistrate judge opinion in the *Friedman* case Movants cite here. However, Value Drug fails to note that the magistrate judge's ruling in the case Value Drug cites was based on the incorrect belief that the filing was made *after* 9 a.m. (the time of compliance), not *before* 9 a.m. Accordingly, the magistrate judge's ruling was overruled by the district court, which held that the motion was timely because it was filed prior to the time of compliance. *See Friedman,* 2015 WL 3484743, at *2.

prior to the day and time of compliance is no matter; as long as a Motion to Quash is filed before the time of compliance, it is timely. *See Friedman*, 2015 WL 3484743, at *2 (finding timely a motion to quash filed seven minutes prior to the time of compliance); Diodato, 2013 WL 6054824, at *1 (finding timely motion to quash the same day as the date of compliance); *Williams*, 2021 WL 1912401, at *8 (same). What's more, Movants communicated to Value Drug and AT&T the day *before* the day of compliance of Movant's intention to file a Motion to Quash, *see* Motion to Quash ("Mot."), Ex. 2, which counsels further toward a finding of timeliness. *See Spring Pharms., LLC v. Retrophin, Inc.*, 2019 WL 3731725, at *6 (E.D. Pa. Aug. 8, 2019) ("Here, where Ms. Zhu filed her motion to quash before the date on which compliance was due and communicated with Retrophin's counsel that she would oppose the deposition on irrelevance and burden grounds, we find her motion was timely."). Because the law on this question is clear, and because Value Drug does not dispute that Movants filed their Motion to Quash before the time of compliance, Movants' Motion is timely.[2]

Finally, even if this Court finds Movants' Motion to Quash to be untimely, it should not reject the Motion on that basis. As Value Drug's own legal authority recognizes, district courts "have broad discretion over the decision to quash or modify a subpoena" and may exercise that discretion to "consider motions to quash that were not 'timely' filed within the meaning of Rule

---

[2] Value Drug's authority is plainly distinguishable. As Value Drug itself concedes, the Motion to Quash in *Friedman,* was filed *after*, not before, the time of compliance. 2014 WL 5810920, at *2. *Centennial Bank v. Servisfirst Bank Inc.* is even more misplaced, as there the Motion to Quash was filed "over two months after the time specified for compliance with the subpoena." 2016 WL 4163560, at *3 (M.D. Fla. Aug. 5, 2016). Similarly, in *Paslar v. Stamford Hospital*, 2017 WL 3055508, at *3 (D. Conn. July 19, 2017), and unlike here, the Court could not conclude that the motion to quash had been filed prior to the date and time of compliance. Finally, Value Drug misconstrues the holding in *CCB LLC v. Banktrust*, 2010 WL 4038740 (N.D. Fla. Oct. 14, 2010). There, because the motion to quash was filed on a federal holiday where the federal courthouse was closed, the Court concluded that, for "all intents and purposes, Fleisher's motion was not filed until the day after he was scheduled to appear for deposition." *Id*. at *1. It was for this reason that the Court in *CCB LLC* found the motion to be untimely. *See id*. To the extent that Value Drug argues that *CCB LLC* stands for the proposition that there is some time period prior to the date and time for compliance where a motion to quash becomes untimely, such a position is unmoored from any limiting principle, and is against the weight of authority discussed above.

3

45 and applicable case law." *Paslar*, 2017 WL 3055508, at *3 (internal quotation marks omitted) (considering the merits of a motion to quash even after finding the motion to be untimely). One reason to excuse untimeliness is where, as is the case here, a subpoena is facially overbroad and the movant had communicated as much to the opposing party. *See Grigsby & Assocs. v. Rice Derivative Holdings, L.P.*, 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (considering untimely motion to quash because circumstances, including clearly overbroad nature of subpoena and prior communication between the parties, warranted overlooking timeliness issue). Finally, any timeliness issues were directly caused by Value Drug, not Movants. As Movants highlighted previously, *see* Mot. at 2, Value Drug gave no notice to either Mr. Taavola or Mr. Cappel that it had subpoenaed their personal cell phone records and location data. What's more, Mr. Taavola only received notice from AT&T on November 12, 2022 that his records had been subpoenaed by a third-party. In these circumstances, this Court should excuse any finding of untimeliness.

    **B.**  **Movants Have Standing to Challenge the Subpoena.**

Value Drug next argues that Movants lack standing to challenge the subpoena, because the subpoena does not impose an undue burden on Movants and because Movants cannot establish that the subpoena requires the disclosure of "privileged or other protected matter." *See* Opp. at 5-6. Not so. As an initial matter, Value Drug does not respond *whatsoever* to Movants' argument that, because Value Drug seeks Movants' personal location data, Movants have standing to challenge the subpoena. *See* Mot. at 4, *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (recognizing privacy interest in personal location data).[3] For this reason alone, Value Drug's argument must fail.

---

[3] Value Drug's suggestion that *Carpenter* is inapplicable is puzzling. Value Drug seeks not only phone records, but also location data, in its subpoena to AT&T. *See* Mot., Ex. 1 at 9. *Carpenter* holds plainly that "an

4

Further, as Value Drug concedes, "numerous courts have held that parties have a personal interest in their financial and telephone records sufficient to confer standing to challenge a subpoena directed to a third-party." *Keim v. ADF Midatlantic, LLC*, 2016 WL 720967, at *2 (S.D. Fla. Feb. 22, 2016) (internal quotation marks omitted) (finding that party had standing to challenge subpoena to his telephone carrier); *Mancuso v. Fla. Metro. Univ., Inc.*, 2011 WL 310726, at *1 (S.D. Fla. Jan. 28, 2011) (same, and collecting cases); *Morgan v. Orlando Health, Inc.*, 2019 WL 11639550, at *2 (M.D. Fla. Mar. 4, 2019) (holding that third-party subscriber has standing because she "has a privacy interest in her cell phone records"). Value Drug's efforts to distinguish those cases devolve into assessment of the *merits* dispositions of each case (*i.e.*, whether the courts found, under the particular circumstances at issue, that the records were sensitive enough to support quashing the subpoena), *see* Opp. at 7, which only confirms Movants' position that those courts determined that the movants had standing to raise the challenges and have them adjudicated. And, not surprisingly, most of the cases Value Drug cites don't concern phone records at all, and in Value Drug's words, have "no application here."[4] Opp. at 7. What's more, the only case Value Drug cites discussing phone records—an unpublished decision from outside this district—is plainly distinguishable.[5] Because Movants

---

individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information]." 138 S. Ct. at 2217. It is that "privileged or other protected matter" which gives rise to Movants' standing. Value Drug's citation to *Henderson-Burkhalter v. National Union Fire Insurance Co.*, 2019 WL 8889978, at *1 (E.D. La. Jan. 18, 2019) is off the mark, as there, unlike here, the movants *only* sought phone records and *did not seek any location data*.

[4] *See, e.g., Cole v. Am. Cap. Partners Ltd.*, 2006 WL 8434811, at *4 (S.D. Fla. Aug. 8, 2006) (concerning financial records, not phone records, and which did not seek *movant's* records); *In re Rum Mktg. Int'l, Ltd.*, 2007 WL 2702206, at *1 (S.D. Fla. Sept. 14, 2007) (confidential trade secrets); *Cellairis Franchise, Inc. v. Duarte*, 193 F. Supp. 3d 1379, 1380–81 (N.D. Ga. 2016) (confidential business and propriety information); *Malibu Media, LLC v. John Does 1-25*, 2012 WL 3940142, at *6 (M.D. Fla. Aug. 21, 2012) (concerning movants' names, addresses, and telephone numbers—not phone *records*—that movants' had already voluntarily disclosed to ISPs).

[5] In *Quarles ex rel. Quarles v. Tennessee Steel Haulers, Inc.*, 2018 WL 5023313, at *1 (M.D. Ala. June 13, 2018), the Court found standing absent only because the movant sought to quash a subpoena seeking someone *else's* phone records. The *Quarles* court found standing to be lacking because the motion to quash did "not

have a "personal and proprietary interest[]" in their phone records, *see Gilmore v. Jones*, 2022 WL 267422, at *2 n.1 (D.N.J. Jan. 28, 2022), Movants have standing to challenge Value Drug's subpoena. *See id*; *Keim*, 2016 WL 720967, at *2; *Mancuso*, 2011 WL 310726, at *1; *Morgan*, 2019 WL 11639550, at *2.

### C. The Subpoena Seeks Irrelevant Information.

Value Drug next argues that its subpoena which seeks all phone records and location data of movants for a period of nearly *five years* is purportedly "targeting" "highly relevant discovery," and is not overbroad. Opp. at 7-8. This argument strains credulity. Value Drug's motion does not "target" anything at all. Instead, Value Drug seeks phone records and location data for a period of nearly five years without any limiting principle, plainly understanding that the overwhelming majority—if not all—of this information will be completely unrelated to any of Value Drug's allegations in the underlying litigation.[6] Courts are clear that unlimited requests for phone records are disfavored. *See Gilmore*, 2022 WL 267422, at *2; *Keim*, 2016 WL 720967, at *2.

Value Drug itself recognized the overbreadth of its subpoena when it voluntarily agreed with Dr. Tully to substantially narrow its scope with respect to Dr. Tully, agreeing to only seek phone records reflecting conversations with known negotiators rather than with anyone. Value Drug responds that the "Tully Agreement is Not Available" to Movants because "Taavola and Cappel are not similarly situated to Dr. Tully." Opp. at 11. But the reverse is true: Movants and Dr. Tully are in fact very similarly situated. Both negotiated the at-issue settlement on Amneal's

---

provide any specifics as to how Faircloth has standing to raise the argument on another person's behalf." *Id*. Here, by contrast, Movants seek to quash the subpoena on their own behalf.

[6] Indeed, in its opposition, Value Drug identifies only three discrete moments during this 5-year period during which it has any basis to claim that relevant communications would have occurred—the 2015-2016 time period Movants assert is the reasonable time period, and particular days in 2018 and 2019 when specific events occurred. Movants dispute the relevance of those latter dates, but regardless Value Drug's own arguments undermine any notion that the full period is probative for their claims.

behalf at the same time and would have been in the same conversations discussing the same issues. Value Drug provides no substantive explanation whatsoever as to why Dr. Tully should be treated separately than Movants.

Further, Value Drug fails to explain why in this specific context evidence of phone discussions reflected in phone records would advance its case in the Underlying Action. For one, Value Drug never explains why the location data it seeks will aid in proving any aspect of its claim in the Underlying Action. And Value Drug has already established that Movants negotiated on Amneal's behalf with Takeda prior to the execution of the settlement agreement, and in those negotiations, necessarily spoke over the phone with their Takeda counterparts. Evidence of these conversations, standing alone, does nothing to prove any conspiracy. And Value Drug entirely fails to justify the overwhelmingly intrusive request of almost *five years* of information. Value Drug claims that "phone records will show communications among alleged conspirators during several key moments" between 2015 and 2019 but fails to provide *any evidence whatsoever* that this would likely be true. Value Drug's argument that phone records would "likely reveal other, presently unknown, agents of the conspirators, including go-betweens," Opp. at 9, is rank, unsupported, and simply not credible speculation.

Value Drug never explains how the voluminous sought-after records would establish this point or how it can divine what calls "are and are not conspiracy related." *Id.* It would be one thing if Value Drug agreed, as it did for Dr. Tully, to limit the request to the numbers of the known negotiators alleged to have participated in forming the conspiracy. But Value Drug inexplicably refuses to do so, and demands troves of additional information. Does Value Drug plan to identify the names associated with every phone number Movants call over the supposedly "targeted" and "highly relevant" five-year period, identify the contemporaneous place of

employment of those people (or, perhaps, each of their family members, in the event the subscriber is not the user), and seek to connect those people to the alleged conspiracy? One can hardly provide a better definition of an impermissible fishing expedition.[7] Value Drug has no actual *evidence*—following voluminous document discovery and over a dozen fact depositions, including the deposition of Mr. Cappel—suggesting that its desired unbounded intrusion into Movants' personal phone records and location data will result in any relevant information at all.

## II.     CONCLUSION

For these reasons, this Court should quash the subpoena. In the alternative, this Court should substantially narrow the subpoena, consistent with the agreement Value Drug reached with Dr. Tully.

Dated: November 30, 2022

KIRKLAND & ELLIS LLP

By: */s/ Nadia Abramson*
Nadia Abramson (FL Bar #121763)
Kirkland & Ellis LLP
300 North Lasalle
Chicago, Illinois 60654
Tel: 312-862-2484
nadia.abramson@kirkland.com

Devora Allon (*pro hac vice pending*)
Alexandra I. Russell (*pro hac vice pending*)
Gilad Bendheim (*pro hac vice pending*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Tel: 212-446-4800
devora.allon@kirkland.com
alexandra.russell@kirkland.com
gilad.bendheim@kirkland.com

*Attorneys for Movants Ken Cappel and Lars Taavola*

---

[7] And Value Drug's avowed intent to perform some sort of analysis of each Movants' call frequencies on their personal cell phones, Opp. at 9, raises further privacy concerns warranting this Court's intervention.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2022, I served the foregoing by electronically filing this document with the Clerk of Court using the CM/ECF system.

Dated: November 30, 2022            */s/ Nadia Abramson*
                                    Nadia Abramson