**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VALUE DRUG COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 21-3500** |
| | : | |
| **TAKEDA PHARMACEUTICALS,** | : | |
| **U.S.A., INC., et al.** | | |

## MEMORANDUM

**KEARNEY, J.**                                               **February 28, 2023**

A pharmaceutical wholesaler again asks us to certify it as a class representative for forty-eight other entities who allegedly paid too much for colchicine they purchased from the patent holder and generic manufacturers from September 15, 2017 until December 1, 2020. The wholesaler ascribes the higher colchicine prices to a conspiracy between the brand name patent owner and three generics who settled patent invalidity claims shortly before trials before Judge Sue L. Robinson allegedly in exchange for a staged entry into the colchicine market while maintaining the patent to restrain later generic manufacturers from entering the market and lower the price.

We are not today addressing the merits of this overarching conspiracy claim. We are instead addressing whether we can certify a class of the known forty-nine entities who purchased an identified amount of colchicine with identified individual damages described by known witnesses as outlined in the wholesaler's trial plan. The wholesaler argues we should essentially presume it has shown impracticability of joinder of claims because there are over forty identified colchicine purchasers. We decline to presume unique class treatment based on a number. We recognize the risk of impracticable joinder may increase with more purchasers. But this is not the end of the test. The issue is whether joinder is impracticable; it is not whether class treatment is

easier for counsel and the Court. It would almost always be easier to work with one party and lawyer as a matter of judicial economy. We instead apply the rigorous scrutiny our Court of Appeals requires as to each aspect of the class certification process including whether joinder of up to a maximum of forty-nine entities is impracticable. And we could readily see a situation where the evidence may pass the rigorous scrutiny. But we cannot speculate. The wholesaler does not adduce evidence of why the joinder of no more than forty-nine known-entity purchasers of colchicine is impracticable.

We must again deny the wholesaler's motion for class certification as we did three months ago for basically the same reason: the wholesaler must adduce evidence in support of its class certification theories. We have no evidence allowing us to find impracticability of joinder of the known colchicine purchasers from September 15, 2017 until December 1, 2020. We deny the wholesaler's renewed motion for class certification.

## I.     Background

Pharmaceutical wholesaler Value Drug Company is a large pharmaceutical wholesaler with over two-hundred and seventy million dollars in annual revenues.[1] It claims it, and forty-eight other known entities, paid inflated prices for colchicine tablets from September 15, 2017 until December 1, 2020. It claims the brand manufacturer and colchicine patent owner Takeda Pharmaceuticals USA conspired with three generic colchicine manufacturers Par Pharmaceutical Inc., Amneal Pharmaceutical LLC, and Watson Laboratories, Inc., to settle the generics' patent invalidity claims on the eve of three trials before the Honorable Sue L. Robinson in late 2015 and early 2016. Value Drug claims this overarching conspiracy captured in settlement agreements allowed staged entry of the three generic manufacturers into the colchicine market causing the forty-nine known purchasers of either branded or the generic versions of colchicine to pay

2

inflated prices to Takeda and each of the three generic manufacturers. Value Drug alleges this conspiracy inflated the four manufacturers' profits they would not have enjoyed had Judge Robinson invalidated Takeda's patent shortly after the scheduled trials.[2]

Takeda obtained Food and Drug Administration approval for its branded Colcrys—a tablet for colchicine—to treat Familial Mediterranean Fever and prevent gout in July 2009.[3] This approval cleared the market of existing colchicine sellers and caused dramatic price increase.[4] Par, then Amneal, and then Watson filed Abbreviated New Drug Applications with the Food and Drug Administration seeking approval for their generic versions of Colcrys. They certified Takeda's patents were either invalid or not infringed by the generics.[5] Takeda sued Par, Amneal, and Watson for patent infringement in the District of Delaware.[6] Takeda settled with each on the eve of trial before the Honorable Sue L. Robinson including with Watson on the first day of trial.[7]

Value Drug alleges Takeda, Par, Amneal, and Watson conspired to "restrict output and restrain competition" by preventing generic colchicine tablets from coming to market by agreeing to withdraw the invalidity claims in the three cases.[8] Takeda, Par, Amneal, and Watson allegedly ordered the market by staggering their own entry and "conspiring to hold off the 'third wave' of generics consisting of generic drug manufacturers who had not yet filed Abbreviated New Drug Applications from entering the market for as long as possible to prevent the incremental price collapse which occurs with each generic entrant."[9] Value Drug alleges this single horizontal conspiracy resulted in overcharges and inflated prices for Colcrys brand and generic colchicine tablets from September 15, 2017 until December 1, 2020.[10]

3

Value Drug today asks us to allow it to present these arguments through class action where it will represent the other known forty-eight other large pharmaceutical purchasers (nineteen of which have substantially larger annual revenues than Value Drug).[11]

We studied a portion of these issues three months ago when Value Drug first moved for class certification. The colchicine manufacturers opposed certifying a class for largely the same reasons we again address today: Value Drug had not adduced evidence of the impracticability of joinder rather than class treatment and had not adduced evidence of predominance or a class wide antitrust impact. We offered Value Drug the opportunity to withdraw its class certification motion until the close of discovery. It declined our offer. We held an extensive hearing and then found Value Drug did not adduce evidence allowing us to find common issues predominate over the individual issues and demonstrate antitrust impact.[12] We further found Value Drug's economist expert did not then rely on evidence to support his theory of antitrust impact.[13] We decided to defer on the numerosity issue to allow Value Drug to complete discovery knowing of the manufacturers' primary arguments as to numerosity and predominance. We denied Value Drug's motion for certification without prejudice to complete discovery.[14]

The parties engaged in substantial discovery. We appointed the Honorable Thomas I. Vanaskie (Ret.) as Special Discovery Master with the parties' consent. We ruled upon thirty-six Special Master Recommended Orders from Judge Vanaskie during discovery. The parties completed discovery. They shared expert opinions including on predominance and antitrust impact.

Value Drug then returned asking we certify their claims for class treatment on behalf of itself and the other forty-eight known entity purchasers of colchicine from September 15, 2017 until December 1, 2020.[15] We held extensive oral argument.[16] Value Drug also submitted a

proposed trial plan with its Motion for class certification.[17] Value Drug represents it will establish liability for all claims and defenses with predominantly common evidence and establish the quantum of overcharge damages owed using evidence applicable to all class members.[18] The trial plan asserts a verdict and judgment entered in this case would be against the class as a whole and not differ between or among members.[19]

We today address the numerosity issue and have similar concerns regarding Value Drug's failure to adduce evidence in support of class certification. Value Drug detrimentally relies on the fact the proposed class exceeds forty members without evidence joinder is impractical.[20] We must deny its motion again for failure to adduce evidence in support of class certification.

## II.    Analysis

Value Drug seeks to certify a class of forty-nine purchasers of brand and generic colchicine tablets seeking to recover overcharges for inflated prices for branded colchicine (known as Colcrys) and generic colchicine tablets because of an antitrust conspiracy to "stave off a 'third wave' of [Abbreviated New Drug Application] filers for as long as possible to prevent incremental price decrease . . . thereby reducing each sellers' market share and profits" in the colchicine market.[21] Value Drug claims co-conspirators include Takeda and generic-brand competitors Par, Amneal, and Watson.[22]

The Supreme Court requires we conduct a two-step analysis in determining whether to certify a class under Rule 23.[23] Value Drug must satisfy the numerosity, commonality, typicality, and adequacy of representation provisions of Rule 23(a).[24] Value Drug must then satisfy the requirements under Rule 23(b)(1), (b)(2), or (b)(3).[25] Value Drug again seeks class certification under Rule 23(b)(3) requiring common questions of law or fact "predominate" over questions

affecting only individual class members, and our finding a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[26]

We reviewed a substantial amount of briefing and extensive oral argument. Counsel focused generally on two arguments: whether we can certify a class of forty-nine known artificial entity purchasers as a class and, again, whether Value Drug can show a predominance of issues outweigh the individual inquiries relating to the forty-nine purchasers.

Value Drug argues it meets the numerosity threshold in Rule 23(a)(1) because the forty-nine proposed class members exceeds the forty-member threshold identified by our Court of Appeals as indicative the joinder of all members is impracticable.[27] Value Drug argued during our hearing "[u]nder *Modafinil*, the 40 is presumptively enough. It's enough. Every single Court that has addressed numerosity challenges to Classes like this one with more than 40 Class Members have found numerosity met where the Class exceeded 40."[28]

Value Drug contends the proposed class is dispersed across twenty-four states and Puerto Rico rendering "joinder difficult, inconvenient, judicially inefficient, and costly."[29] Value Drug further argues judicial economy counsels against joinder because individual suits would involve additional counsel, discovery, and unnecessary delay.[30] Value Drug argues many proposed class members "have small claims relative to the cost of litigating this case" and would not be motivated or have the resources to litigate their respective claims.[31] Value Drug argues joinder is not practicable because class members fear retaliation following denial of class certification. Value Drug asks we take judicial notice of class members in *Modafinil* and *Zetia* declaring they could not sue individually in fear of jeopardizing business relationships and retaliation.[32] Value Drug offers no evidence of similar views as to Colcrys given the much different market for Colcrys today.[33]

6

Takeda, Amneal, and Watson counter Value Drug bears the burden of proving impracticability of joinder by a preponderance of the evidence and we must engage in "rigorous analysis" of such evidence.[34] They argue Value Drug produced "no evidentiary proof" of impracticability of joinder and "whether the class action mechanism is substantially more efficient than joinder of all parties."[35] They argue primarily Value Drug only provides argument, not evidence, of the *Modafinil* factors.[36]

Takeda, Amneal, and Watson argue judicial economy does not counsel certification because consideration of "unnecessary delay" and discovery" must fail under our Court of Appeals's precedent.[37] They argue Value Drug submitted no evidence the "nearly 20 attorneys" who have entered appearances would be "incapable of representing plaintiffs in a joined action in an efficient, coordinated manner."[38]

Takeda, Amneal, and Watson contend Value Drug "has submitted no evidence showing . . . the differential between the value of the proposed class members' potential claims and potential litigation costs is too small to seek recovery via joinder."[39] They contend Value Drug did not submit any affidavits or declarations about the cost of individual litigation or motivation to litigate individually.[40]

They also argue geographic dispersion is given relatively low weight compared to other *Modafinil* factors and is "less probative" because judges across the country "have proven their ability to facilitate remote participation throughout the COVID-19 pandemic."[41] They also point to the fact we have conducted many remote proceedings in this action and the parties have conducted nearly thirty remote and in-person depositions without logistical issues.[42]

7

We agree with Takeda, Amneal, and Watson. Our rigorous analysis of the evidence (especially the lack of evidence) confirms Value Drug has not shown by a preponderance of the evidence joinder would be impracticable. We deny Value Drug's Motion for class certification.

### A.    Our analysis is consistent with mandated present scrutiny of class actions.

Value Drug has now twice moved for class certification without adducing sufficient evidence on the challenged issues. Its experienced lawyers repeatedly insist we should presume impracticability because there are forty-nine known purchasers. Value Drug argues we cannot confuse class certification scrutiny with whether it has met the requirements for class certification. We do not intend to do so. But our role is much different in certification than Value Drug seemingly wants us to accept. We do not decide today whether there are genuine issues of material fact and, absent those, whether we can enter judgment as a matter of law on the antitrust conspiracy claim.  But we need to understand what information we should analyze in deciding whether to certify a class.  We must keep in mind the unique nature of class actions allowing one person to represent several others without their involvement in our court proceedings. We prefer to have all allegedly injured persons in the same case presenting their theories and damages to the jury unless joining those persons in this case would be impracticable.

We begin with a little context for class actions.  The Supreme Court issued the modern Rule 23 governing the use of class actions in 1966.[43] The advisory committee proposing amendments to the rule in 1966 considered "the difficulties that could arise if litigations were carried on, one by one, with individual members of the class."[44] The difficulties included "where a party's act or omission has radiated outward to affect a large number of people."[45] The committee emphasized not all these cases call for class actions.[46] The committee, through proposed Rule 23(b)(3), urged judges to determine "where a class action promises important

advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party."[47] Class certification is warranted where the advantages to economy of effort and uniformity of result outweigh these risks. But in all other situations it would not be.

The benefits of class actions are undoubtedly present in a variety of antitrust cases where the harm can often be widespread and the claims small. The advisory committee which proposed the 1966 rule even envisioned them as likely candidates for class certification under 23(b)(3).[48] But not all antitrust cases warrant the exceptional use of a class action. As Justice Benjamin Kaplan (as one of the principal draftspersons of the 1966 amendments) observed almost sixty years ago, "while many antitrust cases encompass small value claims, not all do. Antitrust plaintiffs often will have suffered significant injury and will have the incentive and capacity to sue individually, particularly as antitrust laws permit the trebling of their damages."[49] Justice Kaplan explained the interest of an individual member to litigate "can be high where the stake of each member bulks large and his will and ability to take care of himself are strong . . ."[50] When these interests of individuals to litigate are high it can negate the purpose of class action as a way to pursue otherwise impractical litigation.

The class action model has now evolved to requiring we rigorously analyze whether joinder is impracticable. Our Court of Appeals requires we employ a "rigorous analysis" of the *evidence* and arguments to determine whether there is actual conformance with Rule 23.[51] We "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."[52]

Class treatment has always been an exception to private litigation. We cannot presume class treatment. We must review evidence. As we remind juries every day, a lawyer's

arguments—as good as they are—are not evidence. We cannot adopt Value Drug's presumptions and assume evidence just because there is a defined universe of no more than forty-nine colchicine purchasers.

### B.   Value Drug did not adduce a basis for us to find impracticability of joinder.

The Supreme Court, through the power granted by Congress, begins the tests to allow a class action with the numerosity requirement.[53] The proposed class must be "so numerous that joinder of all members is impracticable."[54] The numerosity requirement has been given "real teeth" in the last several years.[55] We must "make a factual determination, based on the preponderance of the evidence, that Rule 23's requirements have been met."[56] We must "be presented with evidence that would enable the court to do so without resorting to mere speculation."[57]

Determining whether Value Drug satisfies the numerosity factor "calls for an inherently fact-based analysis requiring we 'take into account the context of the particular case,' thereby providing district courts considerable discretion in making numerosity determinations."[58]

Our analysis today centers on the factors our Court of Appeals requires we consider when rigorously analyzing "impracticality of joinder."[59] We first consider the size of the class. Our analysis is not over if there are forty or more putative class members. It is fair evidence of impracticability of joinder but the Supreme Court and our Court of Appeals does not set a number requirement. We instead must focus on the impracticability of joinder of the number of putative members. Our Court of Appeals instructed us seven years ago we should consider 1) judicial economy, 2) the claimant's ability and motivation to litigate as joined plaintiffs, 3) the financial resources of class members, 4) the geographic dispersion of class members, 5) the

ability to identify future claimants, and, 6) whether the claims are for injunctive relief or for damages.[60]

Determining class size is only the starting point for our analysis.[61] Value Drug concedes this point.[62] While the number is not determinative, we conduct a "rigorous analysis" if the proposed class exceeds forty and a "particularly rigorous analysis" if the proposed class is below forty.[63] We then move to factors relevant to the impracticability of joinder.[64] But, contrary to Value Drug's arguments the *Modafinil* factors do not apply to classes above forty, we will apply the impracticability factors regardless of the proffered number of putative members in the class.[65]

We first address Value Drug's proposed class size and then the impracticability of joinder.

### 1. Value Drug confirms no more than forty-nine known purchasers.

Value Drug seeks to certify a class of no more than forty-nine known multi-million-dollar purchasers of both brand and generic colchicine from September 15, 2017 until December 1, 2020.[66] Value Drug argues their proposed class of forty-nine purchasers satisfies the numerosity requirement.[67]

Our Court of Appeals and sister Circuits instruct "[w]hile '[n]o minimum number of plaintiffs is required to maintain a suit as a class action,' . . . generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[68]

Takeda, Amneal, and Watson briefly argue the class size should be at most thirty-five because of indirect purchasers, consolidated entities, and uninjured purchasers.[69] Takeda, Amneal, and Watson's challenge to Value Drug's calculation of forty-nine class members is without merit. Any attempt to "pick off" proposed class members is best addressed in a Rule

11

23(b)(3) predominance argument rather than a Rule 23(a)(1) numerosity argument.[70] We are also satisfied each purchaser should be counted as a class member and each subsidiary is allowed to "vindicate their own antitrust injuries."[71]

Value Drug has shown a maximum of forty-nine known purchasers.

### 2.   Value Drug has not shown impracticability of joinder.

Our analysis of numerosity does not end with a number.[72] We must place Value Drug's proposed class of forty-nine entity purchasers under a "rigorous analysis" of the evidence to determine whether joinder is impracticable.[73] The Supreme Court in Rule 23(a)(1) requires we rigorously analyze evidence of whether the proposed class is so numerous "joinder of all members is impracticable."[74] Our Court of Appeals seven years ago identified six factors to govern our analysis: 1) judicial economy, 2) the claimants' ability and motivation to litigate as joined plaintiffs, 3) the financial resources of class members, 4) the geographic dispersion of class members, 5) the ability to identify future claimants, and, 6) whether the claims are for injunctive relief or for damages.[75] Judicial economy and ability to litigate as joined parties are of "primary importance."[76]   Our rigorous analysis of the evidence under these factors compels today's Order denying certification.

#### a.   Judicial economy favors joinder.

Judicial economy looks to the administrative burden multiple or aggregate claims place upon the court.[77] Our analysis focuses on whether the class action is substantially more efficient than joinder of no more than forty-nine entity purchasers.[78] We find it is not.

Value Drug argues "[j]udicial economy favors certification, because individual suits (joinder or not), would involve additional counsel, discovery, and unnecessary delay."[79] Value Drug argues "how could it be judicially efficient to have multiple litigations in separate

Courthouses?"[80] Takeda, Amneal, and Watson argue Value Drug submitted no evidence in support of their argument and contend joinder is in fact practical.[81] They also argue the proper comparison for Rule 23(a)(1) is joinder versus class action, not class action versus individual suits.[82]

We must "keep in mind Rule 23(a)'s high standard" when analyzing "judicial economy as a factor."[83] Value Drug must present evidence showing "the class action mechanism is substantially more efficient than joinder of all parties."[84] Mere conclusory or speculative allegations joinder is impractical are not sufficient to satisfy the numerosity requirement.[85] We are primarily concerned with "docket control, taking into account practicalities as simple as that of every attorney making an appearance on the record."[86] Knowledge of existence, names, and addresses of all class members is critical to rendering joinder practical.[87] But judicial economy concerns do not extend so far as to consider the sunk costs from past discovery and litigation, the need to conduct further discovery, and delay if the class is not certified.[88]

We are not unique in this scrutiny. Judge Schenidlin did not certify a class of over 100 institutional investors in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* when the named investors "failed to establish that a consolidated action 'would be somehow less efficient than class certification in resolving this dispute.'"[89] Judge Schenidlin found the named investors "have the ability to contact more than three quarters of the prospective class members eas[ing] the burden placed on them to join other investors to this action" and they failed to "provide . . . evidence that joinder of the proposed class members would be difficult to accomplish."[90] Judge Lechner denied certification of 123 class members in *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.* because 123 members "is not so large as to preclude joinder of all potential plaintiffs."[91] Judge Lechner found no practical impediments to joinder when class members "are

13

(1) known and readily identifiable by name and address, (2) easily subject to service of process and notice, and (3) confined to the limited geographical area of the State of New Jersey."[92] Our colleague Judge Rufe found the judicial economy factor counseled against certification in *Muse v. Holloway Credit Solutions, LLC* because "although joinder of [thirty-two] plaintiffs may create certain logistical challenges, these challenges are less likely to rise to the level of impracticability due to the current advances in remote hearings and conferences."[93] Judge Rufe decided *Muse* roughly nine months into the COVID-19 pandemic after a world-wide switch to a remote workplace and virtual learning. Judge Rufe further found it unlikely joined medical debtors "would request multiple non-overlapping discovery requests or multiple deposition" and joined parties would likely "participate in cost and resource sharing mechanisms such as joining motions."[94]

We also acknowledge our colleagues have certified classes of forty or more direct purchasers in pharmaceutical cases in our Circuit. Value Drug specifically cites *In re Niaspan Antitrust Litigation*, *In re Suboxone Antitrust Litigation*, and *In re Wellbutrin XL Antitrust Litigation*.[95] These thoughtful opinions are not apt today on all issues. Judge Dubois held judicial economy would not be served in *In re Niaspan Antitrust Litigation* because "the Court faces the prospect of individual plaintiffs represented by dozens of different attorneys with the potential for a multitude of summary judgment briefs espousing an array of arguments and additional complications at trial."[96] Judge Goldberg did not directly address judicial economy, relied heavily on geographic dispersion, and noted the drug manufacturers did not challenge the numerosity prong in *In re Suboxone Antitrust Litigation*.[97] Judge McLaughlin found judicial economy favored class certification of thirty-three members in *In re Wellbutrin XL Antitrust Litigation* twelve years ago when facing a "complex case [with] numerous discovery disputes

and repeated joint requests for extensions of the case schedule . . . [and] such delays and other complications would be greatly increased if all direct purchasers were joined in this suit."[98]

Value Drug has not presented evidence to find judicial economy favors class certification. Value Drug presents only conclusory arguments, rather than evidence, and detrimentally relies solely on the fact the proposed class exceeds forty members to establish joinder is impractical.

We are persuaded by Judges Schenidlin and Lechner. Similar to the investors in *Abu Dhabi Commercial Bank* and dealerships in *Liberty Lincoln Mercury, Inc.*, Value Drug has the names, addresses, and amount of colchicine purchases for all forty-nine purchasers.[99] Value Drug presented no evidence showing the known forty-nine purchasers are not easily subject to service of process and notice, which eases the burden of joinder.[100] The proposed class rejected by our colleagues in both *Abu Dhabi Commercial Bank* and *Liberty Lincoln Mercury* is more than double the number of purchasers in Value Drug's proposed class.[101] We do not find a class action would be substantially more efficient than joinder because the forty-nine class members are known, identifiable, and easily subject to service of process and notice.

We are also persuaded by Judge Rufe's most recent judicial economy analysis in *Muse*. Value Drug and Takeda, Amneal, and Watson have similarly participated in numerous remote hearings and conferences, which could be expanded to include joined parties. We have also not been presented with evidence the other entity purchasers would not share in resource-sharing common courtesies such as sharing the extensive joint discovery. Value Drug's proposed trial plan further persuades us judicial economy favors joinder because Value Drug will establish liability and damages using common evidence.[102] The use of "evidence . . . applicable to the

15

Class as a whole rather than individual to its members" makes it more likely joined parties will engage in resource-sharing courtesies and not overburden our judicial capacities.[103]

We are not persuaded by Value Drug's arguments about unnecessary delay and discovery if the class is not certified.[104] Our Court of Appeals reminded us in *Modafinil* "[j]udicial economy does not permit consideration of the sunk costs from past discovery and litigation, or the need to conduct further discovery if the class is not certified."[105] We should "not take into account the sunk costs of the litigation or the need to further delay trial were the class not to be certified."[106] Value Drug's argument "multiple litigations in multiple courthouses" would be judicially inefficient also has no place here.[107] We are not permitted to weigh the efficiency of class actions against individual lawsuits.[108] We are only permitted to weigh the judicial efficiency of class actions against joinder.[109]

We can also distinguish other cases certifying classes of direct purchasers. Unlike in *In re Niaspan Antitrust Litigation*, Value Drug offers no evidence we would face a "multitude of summary judgment briefs espousing an array of arguments" or why the twenty-six experienced lawyers (and presumably their teams of attorneys and paraprofessionals not on the pleadings) who already entered appearances for Value Drug in this case would not be able to adequately represent joined parties.[110] Value Drug argues additional counsel is needed and joinder would be judicially inefficient, but offers no evidence to support their fears.[111] Satisfaction of the numerosity prong requires evidence.[112] The arguments against joinder based on discovery disputes and delay in *In re Wellbutrin XL Antitrust Litigation* no longer apply after our Court of Appeals held "sunk costs from past discovery and litigation," "the need to conduct further discovery," and "further delay" are not to be taken into account by judges when conducting the judicial economy analysis.[113] Numerosity is not challenged in *In re Suboxone Antitrust Litigation*

16

and Judge Goldberg primarily relies on geographic dispersion, a factor we find should be given little weight when addressing known large-scale entity drug purchasers in an antitrust claim.[114]

Judicial economy weighs against certifying Value Drug's proposed class of no more than forty-nine companies purchasing colchicine from September 15, 2017 until December 1, 2020.

### b.  Ability and motivation to litigate favors joinder.

The purpose of ability and motivation to litigate factor "is to further the broader class action goal of providing those with small claims reasonable access to a judicial forum for the resolution of those claims."[115] This analysis, consistent with decades of class action commentary and jurisprudence, focuses on the individual claims versus the cost in pursuing those claims, such as "negative-value" claims.[116]

Value Drug argues many of the entity purchasers have small claims relative to the cost of litigating this case.[117] They also argue a fear of retaliation and jeopardized business relationships pose an issue for joinder.[118] Takeda, Amneal, and Watson argue Value Drug fails to produce evidence it would be uneconomical for smaller claimants to be joined whether claimants actually fear retaliation.[119] They argue purchasers in other cases provided our colleagues with declarations of fear in joining lawsuits because of retaliation or incapability of proceeding individually.[120] Value Drug did not prove by a preponderance of the evidence the proposed Class members do not have the ability and motivation to litigate.

The analysis of the ability and motivation to litigate as joined plaintiffs "examines the access to judicial relief."[121] We consider "the stakes at issue for the individual claims and the complexity of the litigation, which will typically correlate with the costs of pursuing these claims."[122] The Court of Appeals for the Fourth Circuit instructed in *In re Zetia (Ezetimibe) Antitrust Litigation* purchasers in antitrust cases "must bring to bear some evidence" showing it

would be uneconomical for smaller claimants to be individually joined as parties in a traditional lawsuit.[123] "[T]he district court may not consider the economics of individual suits in analyzing this factor."[124]

Judge Dubois rejected a fear of retaliation argument in *In re Niaspan Antitrust Litigation* because the direct purchasers "[did] not provide any evidence that the putative class members in this case fear retaliation or that participation through joinder sparks greater fear of retaliation than does participation through a class action."[125] Judge Goldberg also rejected a retaliation argument in *King Drug Co. of Florence, Inc.* when the direct purchasers "again failed to offer any concrete evidence to support their concern about the hypothetical risk of retaliation."[126] Judge Miller in *In re Zetia (Ezetimibe) Antitrust Litigation* found fear of retaliation "speculative" even though some direct purchasers submitted affidavits about being "anxious" about "discovery burdens and expenses" given the relatively small size of their claims and feared retaliation.[127]

Value Drug has not presented evidence the other purchasers would not be motivated or are incapable of litigating through joinder. The only evidence we have regarding motivation to litigate is the projected size of each purchaser's claim.[128]  But we do not have evidence showing projected costs of litigation through joinder for each purchaser and how those costs compare to the size of the claims. We will not speculate as to these costs. Value Drug did not adduce evidence showing it would be uneconomical for smaller purchasers to be individually joined as parties in a traditional lawsuit. [129] We are further persuaded by Judges Dubois, Goldberg, and Miller on this factor. Value Drug's arguments of "fear of retaliation" and "jeopardize[d] [ ] business relationships with suppliers" lack support.[130] Value Drug, unlike other antitrust purchasers in cases known to Value Drug's counsel, does not offer affidavits or declarations from purchasers about lack of motivation to sue or fear of retaliation necessary to back these

arguments. Value Drug points to fear of retaliation and lack of joined parties following the denial of class certification in *In re Modafinil*, *In re Zetia*, and *Androgel*, but we cannot extrapolate or speculate those same realizations are true here.[131]

We are also not satisfied the other entity purchasers do not have the ability to litigate. Takeda's economist expert Dr. Strombom identified at least ninety-five actions where the forty-nine known entity purchasers joined or sued individually.[132] These sophisticated entities have and do participate in litigation.[133] Motivation and ability to litigate counsels against certification.

### c. Substantial financial resources favor joinder.

The financial resources factor is related to the ability and motivation to join and looks at the proposed class members' financial means.[134]

Value Drug's proposed class members are all sophisticated entities.[135] The undisputed evidence is detailed in the Historical Annual Revenues chart in Dr. Strombom's report.[136] Our review confirms the purchasers all have annual revenues greater than $2 million, and the vast majority are greater than $100 million.[137] This is not a suit involving individuals "likely without great financial means."[138] We hesitate to allow entity purchasers with millions of dollars at stake and large financial resources to "sit on the sidelines as unnamed class members."[139] The class action mechanism is the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only" should apply.[140] Value Drug has not offered evidence showing these entity purchasers do not have the financial resources to litigate through joinder. This factor does not favor certification over joinder.

### d. Geographic dispersion slightly favors class.

Geographic dispersion looks to the location of the parties relative to each other and our Courthouse.[141] Value Drug argues joinder is impractical because the forty-nine class members

are dispersed across twenty-four states and Puerto Rico.[142] Takeda, Amneal, and Watson argue geographic dispersion is afforded "relatively lower weight than the other factors." They also argue courts and judges across the country have "proven [their] ability to facilitate remote participation through the COVID-19 pandemic" which minimizes the probative value of geographic dispersion.[143]

Geographic dispersion between the class members "regularly weighs in favor of an impracticability finding."[144] Judge Dubois found geographic dispersion "relevant, though less significant," in certifying a class in *In re Niaspan Antitrust Litigation.*[145] The class included purchasers scattered across the United States and Puerto Rico.[146] Judge Miller in *In re Zetia (Ezetimibe) Antitrust Litigation* noted "improvement in conducting remote proceedings recently has substantially lessened the burden of litigating in an out-of-state forum."[147] Judge Miller also acknowledged all direct purchasers "are sophisticated and well-resourced companies who understand and have access to the necessary equipment, and thus technological challenges are less likely to constitute barriers to fair and adequate representation if certification were denied."[148] Judge Rufe acknowledged in *Muse* "the advances in remote hearings, conferences, and depositions, has blunted the effect of geographic dispersion on the impracticability of joinder, [but] it still may cause logistical problems, such as when a defendant needs to depose the joined plaintiffs."[149]

Geographic dispersion weighs in favor of certification, but only slightly. Value Drug has provided evidence of the geographic dispersion of the parties across the United States and Puerto Rico.[150] But we are persuaded by Judges Miller and Rufe the impact geographic dispersion has on impracticality of joinder is discounted because of advancements in technology and our ability to conduct remote proceedings during and after the pandemic.[151] Value Drug, Takeda, Amneal,

and Watson already conducted numerous remote depositions, participated in virtual oral arguments before us and before Special Master Judge Vanaskie, and are "sophisticated and well-resourced companies who understand and have access to the necessary equipment."[152] We also agree with Judge Dubois geographic dispersion supports certification when members are dispersed throughout the United States and Puerto Rico, but is afforded less weight.[153] And Takeda, Amneal, and Watson do not seem concerned with their costs in possibly travelling to depose entity representatives to the extent the parties could not agree to virtual depositions.

Geographic dispersion slightly supports certification.

### e.  There are no future claimants.

The ability to identify future claimants is "another traditional element of the numerosity analysis . . . because the need to join unknown future members may make joinder impractical."[154] Value Drug concedes they have identified all class members and they "know all [forty-nine] members."[155] Joinder is not made impractical by the ability to identify future claimants because all class members are known and identified.

### f.  Value Drug does not seek injunctive relief

Value Drug does not seek injunctive relief. This factor does not apply.[156]

We applied the six factors detailed by our Court of Appeals. Our rigorous analysis of the evidence compels our finding joinder is not impracticable. The two primary factors—judicial economy and motivation to litigate—both weigh in favor of joinder. Two other factors—financial resources and identity of future claimants—also weigh in favor of joinder. Geographic dispersion is the only factor weighing in favor of certification, but we afford it relatively low weight comparative to the other factors. We find joinder of the entity colchicine purchasers is not impracticable.

21

## III.    Conclusion

Value Drug has not adduced an evidentiary basis for us to find the impracticability of joinder required for class certification under Rule 23(a)(1). We deny class certification under Rule 23(a)(1) because Value Drug did not satisfy our rigorous analysis necessary to establish the impracticability of joinder by a preponderance of the evidence.[157]

We decline to opine on the remaining Rule 23(a) requirements or whether Value Drug met Rule 23(b)(3)'s "predominance" and "superiority" requirements.

---

[1] ECF Doc. No. 700-2 at App. 257a. Parties submitted a Joint Appendix (App.) for class certification. *See* ECF Doc. Nos. 700–2, 724, 736–2, 763, 821.

[2] We offered a more fulsome detail of the conspiracy claim in our November 22, 2022 Memorandum denying Value Drug's first Motion for class certification. *See* ECF Doc. No. 651 at 2–8. We need not address those same facts. We offer facts today as context for Value Drug's renewed Motion for class certification and the oppositions.

[3] ECF Doc. No. 163 ¶¶ 35–37.

[4] ECF Doc. No. 163 ¶ 36; ECF Doc. No. 700–2 at App. 18a.

[5] ECF Doc. No. 700–2 at App. 199a, 201a–02a.

[6] *See Takeda Pharm. U.S.A., Inc. v. Par Pharm., Inc.*, No. 13-1524 (D. Del. Aug. 30, 2013); *AR Holding Co., Inc. v. Par Pharm., Inc.*, No. 12-419 (D. Del. Apr. 4, 2012); *Takeda Pharm. U.S.A., Inc. v. Amneal Pharm.*, LLC, No. 13-1729 (D. Del. Oct. 21, 2013); *Takeda Pharm. U.S.A., Inc. v. Watson Lab'ys, Inc.*, LLC, No. 14-268 (D. Del. Feb. 27, 2014).

[7] *See* ECF Doc. No. 700–2 at App. 200a, 665a–67a; ECF Doc. No. 861 at 92.

[8] ECF Doc. No. 1 ¶ 3, 60.

[9] ECF Doc. No. 207 at 3–4.

[10] ECF Doc. No. 724 at App. 3107a, 3129a–3156a.

[11] *See* ECF Doc. No. 700–2 at App. 257a.

[12] ECF Doc. Nos. 651, 652.

[13] *Id.*

[14] *Id.*

[15] ECF Doc. No. 700.

[16] We held oral argument on Takeda, Amneal, and Watson's Motion to exclude Mr. Glen P. Belvis, and Value Drug's Motion for class certification as it relates to Rule 23(a)(1) and Rule 23(b)(3). *See* ECF Doc. Nos. 751, 839.

[17] *See* ECF Doc. No. 700–4.

[18] *Id.* at 4.

[19] *Id.* at 5.

[20] *See* ECF Doc. No. 861 at 163.

[21] ECF Doc. No. 207 at 8 n.25. Value Drug moves we define its proposed class as: "All persons or entities in the United States and its territories and possessions, including the Commonwealth of Puerto Rico, who directly purchased branded or generic Colcrys tablets from Takeda, Prasco, or Par at any time from September 15, 2017 until December 1, 2020 (the "Class"). Excluded from the Class are Defendants, their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities." ECF Doc. No. 700 at 2.

[22] We approved Value Drug and Par Pharmaceuticals, Inc. joint stipulation and dismissed Par Pharmaceuticals, Inc. with prejudice following its bankruptcy filing. ECF Doc. Nos. 518, 521.

[23] *In re Citizens Bank, N.A.*, 15 F.4th 607, 612 (3d Cir. 2021).

[24] Fed. R. Civ. P. 23(a)(1–4).

[25] *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc).

[26] Fed. R. Civ. P. 23(b)(3).

[27] ECF Doc. No. 700–1 at 13. *See also In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."). Value Drug points to several cases inside and outside our Circuit where judges certified classes of direct purchasers when the proposed class exceeds forty members. ECF Doc. No. 700–1 at 7, n.1. *See e.g. In re Suboxone Antitrust Litig.*, 421 F. Supp. 3d 12, 46–47 (E.D. Pa 2019, *aff'd,* 967 F. 3d 264 (3d Cir. 2020) (71 members); *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668 (E.D. Pa. 2019) (48 members); *In re Solodyn Antitrust Litig.*, No. 14–2503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).

[28] ECF Doc. No. 861 at 159. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016), *as amended* (Sept. 29, 2016).

[29] ECF Doc. No. 700–1 at 13. *See* ECF 724 at App. 3213a.

[30] ECF Doc. No. 700–1 at 13–14.

[31] *Id.* at 14. *See* ECF Doc. No. ECF 724 at App. 3217a, 259a.

[32] *See* ECF Doc. No. 700–1 at 14–15; ECF Doc. No. 861 at 163, 170:7–9.

[33] Multi-generic competition started in November 2019 when Mylan and other generics entered the colcitrine market. ECF Doc. No. 724 at App. 3129a-3130a. Generic prices fell from $2.58 per tablet in October 2019 to $0.51 per tablet in December 2020. *Id.* at App. 3151a–3154a. The generic tablets sold for 92% of the brand price by December 2020. *Id.* Brand Colcrys market share fell from 30% to 5% by January 2021. *Id.* at App. 3149–3151a.

[34] ECF Doc. No. 736 at 19. They argue "*Modafinil* is clear that the burden to establish the impracticability of joinder is *always* with Plaintiff—even where the proposed class exceeds 40." *Id.* at n.11; *In re Modafinil Antitrust Litig.*, 837 F.3d at 250.

[35] *In re Modafinil Antitrust Litig.*, 837 F.3d at 254.

[36] ECF Doc. No. 736 at 21.

[37] *Id.* at 21–22; *In re Modafinil Antitrust Litig.*, 837 F.3d at 256.

[38] ECF Doc. No. 736 at 21–22.

[39] *Id.* at 22.

[40] *Id.* at 23.

[41] ECF Doc. No. 736 at 24 (citing *In re Zetia (Ezetimbe) Antitrust Litig.*, MDL No. 18-2836, 2022 WL 1577219 at *16 (E.D. Va. Jan. 25, 2022)).

[42] ECF Doc. No. 736 at 24.

[43] Fed. R. Civ. P. 23.

[44] Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (i)*, 81 Harv. L. Rev. 356, 398 (1967).

[45] *Id.* at 398.

[46] *Id.*

[47] *Id.* at 390.

[48] Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (i)*, 81 Harv. L. Rev. at 393 ("The Advisory Committee forecast that cases of fraudulent misrepresentations or antitrust violations affecting numerous persons would be likely, although not by any means sure candidates for class treatment under subdivision (b)(3).").

[49] § 20:2. Origins of antitrust class actions and multidistrict litigations (MDLs), 6 Newberg and Rubenstein on Class Actions § 20:2 (6th ed.).

[50] Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (i)*, 81 Harv. L. Rev. at 391.

[51] *Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583, 591 (3d Cir. 2012) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 322 (3d Cir. 2008)).

[52] *Marcus*, 687 F.3d at 591.

[53] *In re Modafinil Antitrust Litig.*, 837 F.3d at 249.

[54] Fed. R. Civ. P. 23(a)(1).

[55] *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018) (citing Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U. L. Rev. 729, 768 (2013)).

[56] *Mielo*, 897 F.3d at 484 (citing *Marcus*, 687 F.3d at 596–97).

[57] *Id.*

[58] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d 668, 676 (E.D. Pa. 2019) (citing *In Re Modafinil Antitrust Litig.*, 837 F.3d at 249).

[59] *In re Modafinil Antitrust Litig.*, 837 F.3d at 252.

[60] *Id.* at 252–53.

[61] *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 900 (3d Cir. 2022) ("[T]he number of class members is the starting point, [then] trial courts should weigh other factors relevant to the practicability of joinder under Rule 23(a)(1).") (internal citations omitted).

[62] "Well, the evidence -- the number 1 piece of evidence is the size of the Class. And that's the starting point." ECF Doc. No. 861 at 160.

[63] *In re Modafinil Antitrust Litig.*, 837 F.3d at 252–53. ("[I]nquiry into impracticability should be *particularly* rigorous when the putative class consists of fewer than forty members.") (emphasis added).

[64] *Allen*, 37 F.4th at 900.

[65] "I mean, respectfully, Your Honor, I don't believe the *Modafinil* rigorous analysis applies to Classes of . . . . above 40." ECF Doc. No. 861 at 163. We do not suggest the number could never be strong evidence of impracticability. For example, a class of thousands of indirect colchicine consumers would likely be unable to join in this case as a practical matter. They may face other obstacles to class certification but they would be largely unknown and, as end consumers, likely unable to finance this type of case and unable to represent themselves for their relatively limited purchases. Those types of consumers may meet the purposes of class treatment described in both the 1938 and 1966 versions of Rule 23.

[66] ECF Doc. No. 700 at 2.

[67] ECF Doc. No. 700–1 at 13.

[68] *Id.* at 249–50 (citing *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40 putative class members should raise a presumption that joinder is impracticable.").

[69] ECF Doc. No. 736 at 19. We deferred on this issue in our November 23, 2022 analysis given Value Drug could not then show a basis for a common issue based on Takeda's likelihood of losing before Judge Robinson. ECF Doc. No. 651. Value Drug then adduced an expert opinion which we today partially allow to show the generic manufacturers would have been successful in their underlying patent litigations in front of Judge Robinson but without placing a percentage number on the likelihood of success.

[70] *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.").

[71] *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d at 678 (citing *Am. Sales Co., LLC v. Pfizer, Inc.*, No. 14-361, 2017 WL 3669604, at *8 (E.D. Va. July 28, 2017) (allowing subsidiaries to vindicate their own antitrust injuries).

[72] *McDermott v. Federal Savings Bank*, No. 14-6657, 2020 WL 6295058, at *4 (E.D. N.Y. Aug. 12, 2020) ("But the size of the class is just one of many factors the Court must consider, and here, the size of the class (49) alone is insufficient to justify a class action and demonstrate that joinder is impractical.").

[73] *In re Modafinil Antitrust Litig.*, 837 F.3d at 252–53.

[74] Fed. R. Civ. P. 23(a)(1).

[75] *In re Modafinil Antitrust Litig.*, 837 F.3d at 253. "However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (citing *Robidoux*, 987 F.2d at 936).

[76] *In re Modafinil Antitrust Litig.*, 837 F.3d at 253. "But not all factors are to be considered equally; the first two factors—judicial economy and the ability and motivation to litigate as joined plaintiffs—are "of primary importance." *Muse v. Holloway Credit Solutions, LLC*, 337 F.R.D. 80, 85 (E.D. Pa. Dec. 8, 2020).

[77] *In re Modafinil Antitrust Litig.*, 837 F.3d at 254 (citing *Marcus*, 687 F.3d at 594).

[78] *Id.*

[79] ECF Doc. No. 700–1 at 14.

[80] ECF Doc. No. 861 at 164.

[81] ECF Doc. No. 736 at 20–22.

[82] ECF Doc. No. 861 at 182.

[83] *In re Zetia (Ezetimbe) Antitrust Litig.*, 2022 WL 1577219 at *16.

[84] *In re Modafinil Antitrust Litig.*, 837 F.3d at 254. *See also id.* at 258 ("[Th]e numerosity rule does not envision the alternative of individual suits; it considers only the alternative of joinder.").

[85] *See Marcus*, 687 F.3d at 596 (citing *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n. 4 (7th Cir.1990) ("The party supporting the class cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity.") (quotation marks omitted).

[86] *In re Modafinil Antitrust Litig.*, 837 F.3d at 256–57. *See also King Drug Company of Florence, Inc. v. Cephalon, Inc.*, No. 06-1797, 2017 WL 3705715 at *7 (E.D. Pa. Aug. 28, 2017).

[87] *See Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998) (explaining "[k]nowledge of names and existence of members has been called the most important factor, precisely because it renders joinder practicable") (quotation marks omitted); *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 117 (D.N.J. 2003) (explaining "ease of identifying

members and determining addresses" and "ease of service on members if joined" are relevant to determining practicability).

[88] *See In re Modafinil Antitrust Litig.*, 837 F.3d at 256.

[89] *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 258 (S.D.N.Y. June 15, 2010) (quoting *Deen v. New Sch. Univ.*, No. 05-7174, 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008) ("Plaintiffs provide no evidence that joinder of the proposed class members into a consolidated action would be difficult to accomplish, or that this method of adjudication would be somehow less efficient than class certification in resolving this dispute. Without such a showing, Plaintiffs cannot satisfy the judicial economy factor.").

[90] *Abu Dhabi Commercial Bank*, 269 F.R.D. at 258. *See also Mielo*, 897 F.3d 467 (reversing and remanding a grant of class certification under Rule 23(a)(1) when named disability rights advocate presented no evidence sufficient to permit [the judge] to go beyond speculation as to the impracticability of joinder).

[91] *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 74 (D.N.J. May 14, 1993).

[92] *Id.*

[93] *Muse*, 337 F.R.D. at 86. Judge Rufe ultimately granted certification under Rule 23 based primarily on the "ability to motivate and litigate as joined plaintiffs" and "financial resources" factors. *Id.* at 86–87.

[94] *Id.*

[95] *In re Niaspan Antitrust Litigation*, 397 F.Supp.3d at 676–679; *In re Suboxone Antitrust Litig.*, 421 F. Supp. 3d at 47; *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431, 2011 WL 3563385, at *3 (E.D. Pa. Aug. 11, 2011).

[96] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d at 677.

[97] *In re Suboxone Antitrust Litig.*, 421 F.Supp.3d at 47.

[98] *In re Wellbutrin XL Antitrust Litig.*, 2011 WL 3563385, at *3.

[99] *Abu Dhabi Commercial Bank*, 269 F.R.D. at 258–59; *Liberty Lincoln Mercury, Inc.*, 149 F.R.D. at 74. *See* ECF Doc. No. 700–1 at 13, n. 9-10; ECF Doc. No. 700–2 at 718a–731a.

[100] *See Abu Dhabi Commercial Bank*, 269 F.R.D. at 258.

[101] *Id.* at 257 (more than one-hundred class members); *Liberty Lincoln Mercury, Inc.*, 149 F.R.D. at 74 (123 members).

[102] *See* ECF Doc. No. 700–4.

[103] *Id.* at 4. We are aware of the effect of joining several plaintiffs into this case on judicial economy. The Clerk of Court reassigned a variety of ERISA and age discrimination cases with 499 former insurance agents individually suing Allstate Insurance Company to us in April 2016. *Romero et al v. Allstate Insurance, et al.*, No. 01-3894, ECF Doc. No. 841. The insurance agents (later represented by the law firm now representing Takeda in this case) moved for class certification in October 2001. *Id.* at ECF Doc. No. 11. The court first certified an issue class. *Id.* At ECF Doc. No. 134. The court later denied class certification and proceeded with a bellwether trial on one legal issue. The insurance agents eventually elected (when before us) to consolidate nine cases with 499 insurance agents suing on a common set of facts based on Allstate's decisions in 1999 and 2001. We broke the claims into two phases. Allstate (then represented by Watson's and Amneal's law firm in this case) proceeded to move for summary judgment on common issues such as ERISA and age discrimination. We held a bench trial on limited issues solely within our ERISA jurisdiction. We set a trial plan to resolve the claims which could not be settled through four groups of agents. Judge Heffley met with the agents' counsel and Allstate's counsel over several sessions resulting in settling every person's claim before we began jury trials.

We faced several difficult issues in *Romero*. The work proved arduous for counsel and our Chambers. The several lawyers for the agents worked together and appointed a liaison counsel from the law firm today representing Takeda. Counsels' good faith among hard fought multi-million-dollar liability claims allowed us to manage discovery and resolve most of the claims of the surviving individual agents within a couple years with all 499 claims resolved within thirty months of reassignment. It was not easy; but we could address the claims in a practical fashion since we knew every agent's name, address, and claimed damages along with defenses. We anticipate our experienced counsel in this case can meaningfully meet and confer on a proposal to manage this matter to trial in the next several months with about ten percent of the plaintiffs (at most) we managed in *Romero* a few years ago. Value Drug's counsel is already mostly there with a trial plan contemplating the presentation of common issues. *See* ECF Doc. No. 700–4.

[104] ECF Doc. No. 700–1 at 13–14. We agreed with counsel forty days ago to postpone the long-scheduled trial schedule given our need to review Value Drug's second class certification motion. Counsel suggested different time frames but all agreed we needed to move the trial back.

[105] *See In re Modafinil Antitrust Litig.*, 837 F.3d at 256.

[106] *Id.*

[107] *See* ECF Doc. No. 861 at 164.

[108] *See In re Modafinil Antitrust Litig.*, 837 F.3d at 258.

[109] *Id.*

[110] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d at 676–679.

[111] *See* ECF Doc. No. 700–1 at 13–14.

[112] *Mielo*, 897 F.3d at 484 (citing *Marcus*, 687 F.3d at 596–97).

[113] *In re Wellbutrin XL Antitrust Litig.*, 2011 WL 3563385, at *3; *See In re Modafinil Antitrust Litig.*, 837 F.3d at 256.

[114] *In re Suboxone Antitrust Litig.*, 421 F. Supp. 3d at 47; *see In re Zetia (Ezetimibe) Antitrust Litig.*, No. 18–2836, 2022 WL 15772199 (E.D.Va. Jan. 25, 2022) (explaining geographic dispersion is "given relatively lower weight than the other [*Modafinil*] factors).

[115] *See In re Modafinil Antitrust Litig.*, 837 F.3d at 257.

[116] *Id.*

[117] ECF Doc. No. 700–1 at 14.

[118] *Id.*

[119] ECF Doc. No. 736 at 22–23.

[120] *Id.* (citing *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 1577219, at 4–6 and *King Drug Company of Florence, Inc.*, 2017 WL 3705715 at *9–10).

[121] *Muse*, 337 F.R.D. at 86–87.

[122] *Id.* (citing *In re Modafinil*, 837 F.3d at 257).

[123] *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 236 (4th Cir. 2021) (citing *In re Modafinil*, 837 F.3d at 259).

[124] *Id.*

[125] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d at 678.

[126] *King Drug Co. of Florence, Inc.*, 2017 WL 3705715, at *10.

[127] *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 1577219, at *4–6.

[128] ECF Doc. No. 724 at 3217a.

[129] *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th at 236.

[130] *See* ECF Doc. No. 700–1 at 14. Value Drug also acknowledged no retaliatory action has been taken against them as a result of filing this suit. ECF Doc. No. 700–2 at App. 1067–68.

[131] *Id.* at 14–15, n. 14–16.

[132] ECF Doc. No. 736–1 at App. 447a–48a.

[133] *Id.*

[134] *Muse*, 337 F.R.D. 80 at 87.

[135] *See* ECF Doc. No. 736–1 at App. 4272a.

[136] *Id.*

[137] *Id.* Over sixty-eight percent of the purchasers identified by the Defendants have historical annual revenues exceeding $100 million per year. Absent class members "sit[ting] on the sidelines" include Walmart ($572 billion), CVS Pharmacy, Inc. ($292 billion), and McKesson Drug Company ($263 billion). *See also* ECF Doc. No 700–2 at 257a.

[138] *See Muse*, 337 F.R.D. at 87.

[139] *See In re Modafinil Antitrust Litig.*, 837 F.3d at 269 (citing *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("[T]he judges in the majority have never seen a class action where three class members, each with billions of dollars at stake and close to 100% of the total value of class claims between them, have been allowed to sit on the sidelines as unnamed class members. Plaintiffs must satisfy their burden of showing why we should allow this unique putative class to take advantage of this "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.").

[140] *Id.*

[141] *See Muse*, 337 F.R.D. at 87; *In re Wellbutrin XL Antitrust Litig.*, 2011 WL 3563385, at *3.

[142] ECF Doc. No. 700-1 at 13. *See also* ECF Doc. No. at 724 at App. 3213a.

[143] ECF Doc. No. 736 at 24 (citing *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 1577219, at *16) ("Geographic dispersion is also less probative in this case because the Eastern District of Virginia has proven its ability to facilitate remote participation throughout the COVID-19 pandemic.").

[144] *Am. Sales Co., LLC v. Pfizer, Inc.*, No. 14-361, 2017 WL 3669604, at *10 (E.D. Va. July 28, 2017).

[145] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d at 678 (citing *In re Solodyn Antitrust Litig.*, 2017 WL 4621777, at *5 ("[G]eographic dispersion suggests joinder is impracticable, even when putative class members are corporate entities.").

[146] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d at 678.

[147] *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 1577219, at *16.

[148] *Id.*

[149] *See Muse*, 337 F.R.D. at 87.

[150] ECF Doc. No. 724 at App. 3213a.

[151] *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 1577219, at *16; *Muse*, 337 F.R.D. at 87.

[152] *See* ECF Doc. No. 736 at 24. Judge Vanaskie ably and timely conducted numerous oral arguments over virtual platforms to resolve discovery disputes. *See e.g.*, ECF Doc. No. 642. There is no evidence these proceedings could not be conducted if other parties were joined.

[153] *In re Niaspan Antitrust Litig.*, 397 F.Supp.3d at 678.

[154] *Muse*, 337 F.R.D. at 87–88.

[155] ECF Doc. No. 861 at 178; ECF Doc. No. 724 at App. 3124a–25a.

[156] *See* ECF Doc. No. 861 at 177.

[157] We do not opine on the other Rule 23(a) requirements or Rule 23(b)(3).